IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Andrew G. Zukowski,

    Plaintiff,

v.                                     Case No. 2:09–cv–662

Steve Germain, et al.,           Judge Michael H. Watson

    Defendants.

## OPINION AND ORDER

    This case alleging civil rights violations arising from the arrest of plaintiff Andrew Zukowski on September 29, 2008, is before the Court to consider the motion for summary judgment filed by defendant Dr. Michael Mizenko, D.O. (ECF No. 34.) Also before the Court are several filings by Mr. Zukowski including a "motion for U.S. Attorney representation," a motion for an extension of the discovery deadline, and a "request for excuse a judge proceeding the case." (ECF Nos. 37, 39 and 40.) For the following reasons, the motion for summary judgment is granted and the other motions are denied.

## I. Background

    The facts of this case were set forth in the Court's Opinion and Order dated June 18, 2010 (ECF No. 36), and will not be repeated in detail here. Briefly summarized, Mr. Zukowski's claims arise out of his arrest at a car dealership on September 29, 2008, after he was asked, but refused, to leave the premises. As it relates to Dr. Mizenko's motion for summary judgment, Mr. Zukowski's complaint contains the following allegations. Following his arrest at the Mercedes-Benz of Easton, a Germain car

dealership, Mr. Zukowski was transported to jail. (Compl., ECF No. 1 at 3, Attachment 4A.) He appeared in Franklin County Municipal Court on the charge of criminal trespass. (Compl. Attach. 6-7.) The Municipal Judge, after learning that an application for emergency admission had been issued for Mr. Zukowski, dismissed the criminal charge in order to permit Mr. Zukowski to undergo further psychiatric evaluation. (Compl. Attach. 7.) Mr. Zukowski was then transported to "Netcare" and on to Riverside Methodist Hospital. (Compl. Attach. 4B.) He was subsequently transferred against his will to Twin Valley, a mental health facility. (Compl. 3.) He spent 48 days in Twin Valley during which he was administered psychotropic drugs and had his blood drawn against his will. (*Id.*) The drugs caused him to endure "very bad" side effects including swollen legs. (*Id.*) As a result of these events, Mr. Zukowski contends that he was deprived of his liberty for 51 days. (Compl. 4.) He seeks both compensatory and punitive damages. (*Id.*)

## II. Summary Judgment Standard

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metro. Gov't of Nashville-Davidson Cnty*, 538 F.3d 431, 438–39 (6th Cir.2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. The Motion for Summary Judgment

In his motion for summary judgment, Dr. Mizenko, a psychiatrist employed by Riverside Methodist Hospital, sets forth, by affidavit with attached exhibits, the following additional facts providing a more complete picture of the circumstances surrounding Mr. Zukowski's admission to Riverside and transfer to Twin Valley. On October 1, 2008,

Netcare submitted an application for emergency admission seeking Mr. Zukowski's admission to Riverside. (Aff. Mizenko at ¶6, Exh. A-2.) Mr. Zukowski was admitted to Riverside on October 2, 2008, at 12:01 a.m. and was immediately examined and advised of both the involuntary admission process and his corresponding rights. (*Id.* at ¶¶7-8.) On October 3, 2008, Dr. Mizenko, in his capacity as chief clinical officer at Riverside, signed an affidavit declaring Mr. Zukowski mentally ill. (*Id.* at ¶9.) This affidavit was submitted to the Franklin County Probate Court along with an application seeking permission to administer antipsychotic medication to Mr. Zukowski. (*Id.* at ¶¶9-10, Exhs. A-4 and A-5.) On that same date, the Probate Court issued an order of detention placing Mr. Zukowski in the custody of the Franklin County Alcohol, Drug and Mental Health Board with placement at Riverside. (*Id.* at Exh. B.) The Probate Court also filed a notice of hearing for Full and Forced Psychotropic Medication for October 8, 2008 and filed the Rights of an Involuntarily Detained Person notice as required by Ohio Revised Code ("O.R.C.") §5122.05. (*Id.* at Exh. C.) Mr. Zukowski was taken to the Probate Court for his hearing on October 8, 2008. (*Id.* at ¶15.) As a result of the hearing, the Probate Court filed a Judgment Entry of Commitment declaring Mr. Zukowski mentally ill pursuant to O.R.C. §5122.01(B)(2), (3), and (4). (*Id.* at Exh. E.) The Judgment Entry ordered that Mr. Zukowski be detained for not more than 90 days at Riverside pending transfer to Twin Valley. (*Id.*) The Probate Court also allowed mental health providers to administer forced psychotropic medication to Mr. Zukowski. (*Id.* at Exh. F.) Mr. Zukowski was transferred from Riverside to Twin Valley that same day. (*Id.* at ¶15.)

Dr. Mizenko was not Mr. Zukowski's attending physician. (Aff. Mizenko at ¶14.)

Once the Probate Court filed its Order of Detention, Dr. Mizenko no longer had any responsibility for Mr. Zukowski's care and treatment. (*Id.*)  In connection with the Affidavit and Application, Dr. Mizenko reviewed and relied upon information provided by Netcare and the staff at Riverside as well as his education and experience.  (*Id.* at ¶11.)

Based on these facts, Dr. Mizenko asserts that he is entitled to summary judgment because Ohio law provides immunity to health care providers acting in good faith.  Dr. Mizenko argues that he complied with Ohio's statutory scheme with respect to Mr. Zukowski's involuntary admission to Riverside and acted in good faith at all times.

Mr. Zukowski has not responded to Dr. Mizenko's motion for summary judgment. Fed.R.Civ.P. 56 states that "[i]f the opposing party does not [] respond, summary judgment should, if appropriate, be entered against that party."  This language makes clear that the failure to properly respond to a motion for summary judgment, by itself, is not sufficient grounds for granting summary judgment.  As explained by the Sixth Circuit,

> . . .the movant must always bear [the] initial burden regardless if an adverse party fails to respond.  In other words, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.  The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.

*Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991).  Consequently, despite Mr. Zukowski's failure to respond to Dr. Mizenko's motion, this Court must determine whether a genuine issue of material fact exists which would preclude summary judgment in Dr. Mizenko's favor.  It is to this question that the Court will now turn.

### IV. Analysis

At the outset, the Court notes that the body of Mr. Zukowski's complaint does not

specifically discuss the actions of Dr. Mizenko. Generally, while pro se pleadings are held to a less stringent standard than pleadings drafted by lawyers, a court is not required to "conjure up unpled allegations" or to "create a claim for the plaintiff." *Browder v. Anderson*, 2008 WL 1884093 (W.D. Ky. Apr. 28, 2008). This is because such action "would [] transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at *2 (quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985)). That being said, however, the Court does have some information from the case record about the claim Mr. Zukowski is presenting.

As explained in the Court's Opinion and Order filed on June 18, 2010 (ECF No. 36), Mr. Zukowski has indicated that he is pursuing a claim under 42 U.S.C. §1985. According to Mr. Zukowski, the defendants allegedly conspired to deprive him of his civil liberty by placing him in Riverside and Twin Valley. (Pl.'s Resp. Mot. Dismiss, ECF No. 11.) Based on Mr. Zukowski's explanation of his allegations, the Court has construed his complaint as asserting a claim under §1985(3). Because, as explained at length in his affidavit, Dr. Mizenko played some role in the involuntary commitment process, the Court will construe Mr. Zukowski's claim to include Dr. Mizenko in the alleged conspiracy. Consequently, for purposes of the current motion for summary judgment, the Court will consider whether, construing Mr. Zukowski's allegations in his favor, a genuine issue of material fact exists relating to this §1985(3) claim and, if not, whether Dr. Mizenko is entitled to judgment as a matter of law on the §1985(3) claim.

### A. <u>Section 1985(3)</u>

42 U.S.C. 1985(3) prohibits a conspiracy "for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3). In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the law; and, (3) an act in furtherance of that conspiracy, (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005). Further, the conspiracy must be motivated by racial or other class-based invidiously discriminatory animus. *Id.*

It is clear that conspiracy claims under 42 U.S.C. §1985 must be pled with the same specificity as conspiracy claims under §1983. *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984); *see also Stewart v. Wilkinson*, No. 2:03-cv-0687, 2008 WL 2674843, at *10 (S.D. Ohio July 7, 2008). Conspiracy claims under 42 U.S.C. §1983 must be pled with some degree of specificity. Vague and conclusory allegations unsupported by material facts are not sufficient to state a conspiracy claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Further, even if a conspiracy has properly been pled, not every conspiracy to deprive someone of his or her constitutional rights is actionable under §1985. Rather, the deprivation must be motivated by some class-based discriminatory animus. *United Bhd of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825 (1983); *Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005). Further, "[a] class protected by §1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick*

*Enters, Inc v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994). That is, §1985 is available only to those "classes of insular minorities that were intended to receive special protection under the Equal Protection Clause of the Constitution . . . ." *Averitt v. Cloon*, 796 F.2d 195, 198 (6th Cir. 1986). The failure to allege membership in a protected class, and discrimination based upon such class membership, requires dismissal of any claim under §1985(3). *Griffin*, 403 U.S. at 88; *see also Macko v. Bryon*, 641 F.2d 447 (6th Cir. 1981); *Smith v. Martin*, 542 F.2d 688 (6th Cir. 1976), *cert. denied*, 431 U.S. 905 (1977). Further, to prevent 1985(3) from being used as a "general federal tort law, courts have been careful to limit causes of action thereunder to conspiracies that deprive persons of constitutionally protected rights, privileges, and immunities." *Brown v. Phillip Morris, Inc.* 250 F.3d 789, 805 (3d Cir. 2001) (citing *Libertad v. Welch,* 53 F.3d 428 (1st Cir. 1995)).

As discussed above, construing the allegations of the complaint and its exhibits in the light most favorable to Mr. Zukowski, he has alleged a concerted effort by Dr. Mizenko and other defendants to deprive him of his liberty through his involuntary commitment to Riverside and Twin Valley. Further, there is some indication in Mr. Zukowski's various filings in this case that he believes he is a member of a protected class based on his Polish national origin. Assuming, without deciding, that these allegations may be sufficient to establish the elements of conspiracy and racial animus necessary to support a §1985(3) claim, Dr. Mizenko has not challenged them in his motion for summary judgment. Similarly, Dr. Mizenko has not addressed the issues of the conspiracy's purpose or any act in furtherance of the conspiracy in his motion. As a result, Mr. Zukowski was not required to come forward with any facts raising a genuine

issue as to the elements. Rather, the Court reads Dr. Mizenko's motion as addressed solely to Mr. Zukowski's claim of injury—that he suffered the unlawful deprivation of his liberty or, more precisely, that he was deprived of his liberty without due process of law. Consequently, the Court will consider only this issue in deciding whether, in light of Mr. Zukowski's failure to respond to the motion for summary judgment, Dr. Mizenko's evidentiary submissions establish that he is entitled to judgment as a matter of law on Mr. Zukowski's §1985(3) claim.

### B. Did Mr. Zukowski's involuntary commitment result in the deprivation of his liberty without due process of law?

The Supreme Court has "recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." *Simon v. Cook*, 261 Fed. App'x 873, 884 (6th Cir. 2008) (quoting *Vitek v. Jones*, 445 U.S. 480, 491–92 (1980)). Consequently, the Supreme Court has held that "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself . . . ." *Id.* (quoting *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975)). In light of these holdings, "state laws have been interpreted to require a finding of dangerousness before an individual can be committed." *Id.* Additionally, due process fundamentally requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). However, courts recognize that "[d]ue process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (internal citations omitted).

In *Mathews*, the Supreme Court identified three factors to be considered in

determining the process due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Acceptable procedural safeguards include written notice, a hearing, the opportunity to present testimony of witnesses, an independent decision maker, a written statement of the evidence relied upon and the reasons for the transfer to a mental hospital, legal counsel, and the effective notice of these rights. *Simon*, 261 Fed. App'x at 885.

Ohio Revised Code §5122.05 sets forth the involuntary admission process as follows:

> (A) The chief clinical officer of a hospital may, and the chief clinical officer of a public hospital in all cases of psychiatric medical emergencies, shall receive for observation, diagnosis, care, and treatment any person whose admission is applied for under any of the following procedures:
>
> (1) Emergency procedure, as provided in section 5122.10 of the Revised Code;
>
> (2) Judicial procedure as provided in sections 2945.38, 2945.39, 2945.40, 2945.401, 2945.402, and 5122.11 to 5122.15 of the Revised Code.
>
> Upon application for such admission, the chief clinical officer of a hospital immediately shall notify the board of the patient's county of residence. To assist the hospital in determining whether the patient is subject to involuntary hospitalization and whether alternative services are available, the board or an agency the board designates promptly shall assess the patient unless the board or agency already has performed such assessment, or unless the commitment is pursuant to section 2945.38, 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code.

(B) No person who is being treated by spiritual means through prayer alone, in accordance with a recognized religious method of healing, may be involuntarily committed unless the court has determined that the person represents a substantial risk of impairment or injury to self or others;

(C) Any person who is involuntarily detained in a hospital or otherwise is in custody under this chapter, immediately upon being taken into custody, shall be informed and provided with a written statement that the person may do any of the following:

(1) Immediately make a reasonable number of telephone calls or use other reasonable means to contact an attorney, a licensed physician, or a licensed clinical psychologist, to contact any other person or persons to secure representation by counsel, or to obtain medical or psychological assistance, and be provided assistance in making calls if the assistance is needed and requested;

(2) Retain counsel and have independent expert evaluation of the person's mental condition and, if the person is unable to obtain an attorney or independent expert evaluation, be represented by court appointed counsel or have independent expert evaluation of the person's mental condition, or both, at public expense if the person is indigent;

(3) Have a hearing to determine whether or not the person is a mentally ill person subject to hospitalization by court order.

The administration of antipsychotic medication is governed by O.R.C. §5122.271 and allows a physician to administer such treatment either in an emergency situation or upon application to the court. The Supreme Court of Ohio has held that a physician may order the forced medication of an involuntarily committed mentally ill patient upon a determination that (1) the patient presents an imminent danger of harm to himself/herself or others, (2) there are no less intrusive means of avoiding the threatened harm, and (3) the medication to be administered is medically appropriate for the patient. *Steele v. Hamilton Cty. Comm. Mental Health Bd.*, 90 Ohio St. 3d 176, 184 (2000).

Through his affidavit and attached exhibits, Dr. Mizenko has provided evidence of both the procedural safeguards under Ohio law and the application of these safeguards to Mr. Zukowski. Specifically, Dr. Mizenko's evidence establishes that a finding of Mr. Zukowski's dangerousness was made at the outset of the involuntary commitment process. Mr. Zukowski was referred to Netcare and later to Riverside upon a finding that he was a threat to himself and others. (Aff. Mizenko, Exhs. A-1, A-2.) Upon arrival at Riverside, Mr. Zukowski was informed of both the involuntary commitment process and his rights with respect to that process. (*Id.* at §7, Exhibit A-3.) Shortly thereafter, an application was made to an independent authority, the Franklin County Probate Court, to have Mr. Zukowski declared mentally ill and for permission to administer antipsychotic medication to him. (*Id.* at §§9-10, Exhs. A-4 and A-5.) The Probate Court issued an order of detention and set a hearing with written notice to Mr. Zukowski's attorney, John D. Moore, Jr., the Franklin County ADAMH Board, Ohio Legal Rights, and Mrs. Zukowski, including a notification regarding the rights of an involuntarily detained person. (*Id.* at Exhs. B, C, and D.) Mr. Zukowski was afforded a hearing on October 8, 2008, before a Magistrate of the Probate Court. (*Id.* at Exh. E.) The Magistrate Judge found upon clear and convincing evidence that Mr. Zukowski was a mentally ill person and ordered his commitment to Riverside pending transfer to Twin Valley (*Id.*) Further, the Magistrate, upon examination of the evidence and for good cause shown based upon the recommendation of two physicians, authorized the administration of forced psychotropic medication to Mr. Zukowski. (*Id.* at Exh. F.)

Mr. Zukowski does not contend that Ohio law itself fails to provide due process. The evidence submitted by Dr. Mizenko establishes that, with respect to his

responsibility in Mr. Zukowski's involuntary commitment, Ohio law was followed. Mr. Zukowski has not provided any evidence that he was denied these procedural safeguards during his involuntary commitment process. Absent any evidence of this nature, Mr. Zukowski has failed to establish a genuine issue of material fact about whether the process through which he was involuntarily committed or forcibly medicated complied with due process.

Further, the evidence submitted by Dr. Mizenko belies any suggestion by Mr. Zukowski that the administration of psychotropic drugs to him could be conduct that so "shocks the conscience" that a substantive due process violation must be found to have occurred. The evidence submitted by Dr. Mizenko demonstrates that Mr. Zukowski was not subjected to treatment "so brutal and offensive that it did not comport with traditional ideas of fair play and decency." *Simon, supra,* at 881, *quoting Breithaupt v. Abram*, 352 U.S. 432, 435 (1957). Mr. Zukowksi has provided nothing to persuade the Court otherwise. Consequently, Dr. Mizenko's motion for summary judgment will be granted as to Mr. Zukowski's §1985(3) claim.

### C. Additional Claims

Dr. Mizenko has also asserted in his motion for summary judgment that he has immunity from liability under O.R.C. §5122.34(A) for any state law claims Mr. Zukowski may be asserting. O.R.C. §5122.34(A) provides, in relevant part, as follows:

> Persons . . . acting in good faith, either upon actual knowledge or information thought by them to be reliable, who procedurally or physically assist in the hospitalization or discharge, determination of appropriate placement, or in judicial proceedings of a person under this chapter, do not come within any criminal provisions, and are free from any liability to the person hospitalized or to any other person.

To the extent that Mr. Zukowski's complaint can be construed as attempting to assert any such claims, in order for Dr. Mizenko to be entitled to the statutory immunity he claims, he must demonstrate that he followed Ohio's statutory scheme. *Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 Fed. App'x 224, 2004 WL 1543951 (6th Cir. June 30, 2004). Dr. Mizenko's compliance with Ohio's statutory scheme regarding both the involuntary admission of persons and the administration of antipsychotic medication has been set forth in great detail above. Again, Mr. Zukowski has provided no evidence that these statutes were not followed. Consequently, Mr. Zukowski has failed to raise a genuine issue regarding this fact.

Because Dr. Mizenko has demonstrated his compliance with the statute, he is entitled to immunity if he acted in "good faith." *Ellison*, 108 Fed. App'x at 226. Dr. Mizenko has provided evidence of his subjective good faith by explaining in his affidavit that his decisions regarding Mr. Zukowksi were made based upon his review of Mr. Zukowski's medical records, his reliance on the opinions from Netcare, his consideration of the opinions, examinations, and observations of his Riverside staff, and his own education, training, and experience relating to involuntary admission of patients. As with the issue of compliance with Ohio's statutory scheme, Mr. Zukowski has failed to present any evidence challenging Dr. Mizenko's demonstration of good faith. Consequently, to the extent that Mr. Zukowski's complaint can be construed as having asserted any state law claims arising from his involuntary commitment, Dr. Mizenko is entitled to immunity as to those claims under R.C. §5122.34(A).

## V. Remaining Motions

### A. Motion for U.S. Attorney Representation

In his motion for U.S. Attorney representation, Mr. Zukowski states that he would like this case assigned to the United States Attorney because it alleges hate crimes based on his Polish national origin and his status as a disabled person under the Americans with Disabilities Act. To the extent that Mr. Zukowski may be expressing an intent to institute a criminal action against the defendants based upon the allegations of the complaint, he does not have a private cause of action available to him. *See, e.g. Elliott v. CVS Pharmacy,* 2010 WL 889536 (W.D. Ky. March 8, 2010) (no private cause of action for alleged violation of federal hate crime statutes); *see also Zukowski v. Bank of America,* Case No. 2:09-mc-30 (S.D. Ohio July 7, 2009) (no authority permitting a private individual to initiate a criminal prosecution). On the other hand, if Mr. Zukowski is attempting to pursue a criminal prosecution relating to the events giving rise to his complaint, he may, himself, bring the events at issue to the attention of the United States Attorney. The Court, however, has no authority to appoint the United States Attorney to represent Mr. Zukowski either in such a matter or in connection with this civil action.

### B. Request for Excuse a Judge Proceeding the Case

Through his "request for excuse a judge proceeding the case," Mr. Zukowski apparently seeks to have the undersigned recuse himself. The entirety of Mr. Zukowski's allegations, quoted verbatim, are as follows:

> Now, Andrew Zukowski, came and hereby request to excuse
> the Judge Watson off Case No. 2:09-cv-662 because is
> existing a conflict of interest.

> Judge Watson served on the Tenth District Court of Appeals, from May 7, 2003 until Sep. 30. 2004. From January 7. 1995 until Apr.30. 2003 Judge Watson served on the Franklin County Common Pleas Court.
>
> Before his appointment to the Common Pleas Court, he served as Chief Councel to Governor Voinovich throghout 1994 and 1995.
>
> This judge dismissed my Motion for remove this case to U S District Court in Washington.
>
> He is not impartial judge and he has to be remove of this case where involved defendants are: State Ohio, policeman of Columbus department, health care Ohio, etc.
>
> The Court of Southern district is not following the US Constitution are federal rules. It cover a wrong entries, decisions against me in pass. This judge has not experience on implementation and protection constitutional right the people.
>
> Therefore, I do respectfully request for excuse this judge and overrule his wrong entry and move this case to the US District Court in Washington, D.C.

Under 28 US.C. §455 (a), "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Judicial rulings alone typically are insufficient as grounds for disqualification. *United States v. Bibbins*, 2006 WL 2290466 (E.D. Tenn. Aug. 8, 2006). Rather, the basis for recusal must arise from an extrajudicial source. *Id.* Further, 28 U.S.C. §144 provides that the facts sufficient to demonstrate bias or prejudice are to be set forth by affidavit and must be such "as would 'convince a reasonable man that a bias exists.'" *Id.* (quoting *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983)).

At the same time, "[a] judge has an obligation not to recuse himself when there is no occasion to do so." *Bibbins*, 2006 WL 2290466 (quoting *United States v. Hoffa*, 382

F.2d 856, 861 (6th Cir. 1967) (internal citation omitted)). As courts have cautioned, "[a] motion for recusal should not be granted lightly; a judge is under as much obligation not to recuse himself when facts do not show prejudice as he is to recuse himself if they do." *Id.* (internal citation omitted).

Initially, the Court notes that Mr. Zukowski has not set forth any of his allegations by affidavit. This fact, standing alone, would justify the denial of his motion. However, even if he had submitted his allegations by affidavit, they do not establish grounds for recusal. The mere fact of previous state service, without any additional facts or supporting evidence, would not lead a reasonable person to believe that bias exists against Mr. Zukowski and in favor of any state agencies or employees. Further, to the extent that Mr. Zukowski believes that the Court's failure to grant his request to transfer this case to Washington D.C. demonstrates partiality, as discussed above, judicial rulings, without more, are generally insufficient to demonstrate bias. *Id.* Because Mr. Zukowski has failed to present a reasonable factual challenge to the Court's impartiality, to the extent that he is seeking this Judge's recusal, his "request for excuse" will be denied.

The Court also notes that, in his request, Mr. Zukowski appears to be seeking reconsideration of the Court's previous denial of his request to transfer this case to Washington, D.C. The Court construed this motion as a motion to transfer pursuant to 28 U.S.C. 1404(a). As the United States Supreme Court observed in *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983), "every order short of a final decree is subject to reopening at the discretion of the district judge." The United States Court of Appeals for the Sixth Circuit has made similar observations. "District

courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted). An order granting or denying a motion to transfer venue is interlocutory in character. *See, e.g.*, 15 Charles Allen Wright et al., Federal Practice & Procedure §3855 (3d ed. 2007).

Although Rule 60(b) (and, for that matter, Fed. R. Civ. P. 59(e)) do not supply the power or the standard for deciding whether to reconsider an interlocutory order, courts have generally applied criteria that respect the need to grant some measure of finality even to interlocutory orders and which discourage the filing of endless motions for reconsideration. Thus, as the court observed in *Rottmund v. Continental Assur. Co.*, "[a] federal district court has inherent power over interlocutory orders and may modify, vacate, or set aside these orders when it is consonant with justice to do so. Because of the interest in finality, however, courts should grant motions for reconsideration sparingly." 813 F.Supp. 1104, 1107 (E.D. Pa. 1992) (internal citation omitted). Courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) to correct a clear error of law or to prevent a manifest injustice. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir. Feb. 6, 2004) (citing *Reich v. Hall Holding Co.*, 990 F.Supp. 955, 965 (N.D. Ohio 1998)). Generally, a manifest injustice or a clear error of law requires unique circumstances, such as injunctive relief scenarios or superseding factual scenarios. *See, e.g., Davis by Davis v. Jellico Comm. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1999) (no manifest injustice when trial court

refused to reexamine the issue of damages in a jury verdict when plaintiff died after jury verdict was reached); *Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir.1994) (clear error of law because the district court failed to address a due process claim); *Hayes v. Douglas Dynamic, Inc.*, 8 F.3d 88, 90 n.3 (1st Cir. 1993) (motion to reconsider presented no new information).

Mr. Zukowski's motion does not address any of the three issues identified above. Rather his motion simply indicates his disagreement with the Court's decision not to transfer this case to Washington, D.C. For this reason, and for the reasons set forth by the Court initially in denying his request to transfer, Mr. Zukowski's motion, to the extent it can be construed as a motion for reconsideration, will be denied.

### C. Motion for Extension of Time to Complete Discovery

Mr. Zukowski's motion for extension of time to complete discovery does not address his need for additional time to complete discovery so much as it details his inability to retain counsel despite his various efforts. He again asks that the Court assign the U.S. Attorney to this "criminal/civil" case. While the Court has the discretion, under 28 U.S.C. §1915(e) to appoint counsel to indigent civil litigants, Mr. Zukowski did not seek to proceed and is not proceeding as an indigent litigant in this case. Rather, Mr. Zukowski has paid the $350.00 filing fee in full. Further, as discussed above, to the extent that Mr. Zukowski views this case as relating to criminal matters warranting the U.S. Attorney's involvement, he has no private cause of action to pursue such claims and it is his responsibility to bring any activity he believes to be criminal to the U.S. Attorney's attention. For all of these reasons, the Court will not appoint the U.S. Attorney or any other counsel to represent Mr. Zukowski in this case.

Finally, if the Court were to understand Mr. Zukowski's inability to retain counsel as implying his need for an extension of the discovery deadline, this fact, without more, is not sufficient to establish the good cause necessary for modifying the case schedule under Fed.R.Civ.P. 16(b). Mr. Zukowski has not set forth the specific discovery he is seeking or why he has been unable to obtain it within the previously established time limit. Moreover, he has not provided any information about how much additional time he may need. Absent any information of this kind, the Court will decline to extend the discovery deadline.

### VI. Disposition

Based on the foregoing, the motion for summary judgment (ECF No. 34) filed by Dr. Mizenko is **GRANTED**. Plaintiff's claims against Dr. Mizenko are dismissed with prejudice. The remaining motions (ECF Nos. 37, 39 and 40) are **DENIED**.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**